

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 FEB 22 PM 2: 56

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MARTIN GOULD, JR. | * | CIVIL ACTION |
| VERSUS | * | NO. 00-0304 |
| THE M/V GOLDEN DESTINY its tackle, appurtenances *IN REM*, FREEDOM NAVIGATION, INC. and UNIVERSE MARITIME, LTD. | * | SECTION "N" (Judge Edith Brown Clement) |
| | * | MAGISTRATE (2) (Mag. Judge Joseph Wilkinson, Jr.) |

**RESPONSE TO PLAINTIFF'S "MEMORANDUM
IN OPPOSITION TO DEFENDANTS' REQUEST FOR LEAVE
TO FILE MOTION FOR SUMMARY JUDGMENT"**

MAY IT PLEASE THE COURT:

Defendants Freedom Navigation, Inc. and Universe Maritime, Ltd., respectfully submit a reply memorandum in response to plaintiff Martin Gould, Jr.'s "Memorandum in Opposition to Defendants' Request for Leave to File Motion for Summary Judgment", which counsel for plaintiff filed with the Court on Friday, February 16, 2001.

**Background**

Plaintiff's alleged injury occurred on February 6, 1999, when he allegedly sprained his ankle while disembarking from defendants M/T GOLDEN DESTINY. Plaintiff essentially

497758_1

-1-

caused his own injury by stepping up on top of a round bunker pipe (which is not a step) when he had no good reason to do so, and then startled by a tug whistle, turned his ankle as he was stepping down from the pipe.

Plaintiff filed his Complaint in this matter on January 31st, 2000, just a little over a year ago. At no time during the course of these proceedings has counsel for plaintiff ever expressed any interest in taking the deposition of defendants' master, Captain Konstadinos Adedakis, nor has counsel formally or informally sought an "inspection" of the ship.

Although counsel mentions, possibly as a distraction from the central issue, that the M/T GOLDEN DESTINY was photographed by defendants' representatives on February 7th (the day after plaintiff's alleged accident), and again during March, 2000 (some five-six weeks after suit was filed), and once again in December, 2001, there is nothing unusual about that, since when an accident occurs or a lawsuit is filed, it is a natural reaction of a ship owner to have its vessel or property photographed.

After a number of delays caused by plaintiff's work schedule, the deposition of Gould was finally taken on November 21, 2000. During the deposition, an informal request was made by plaintiff's counsel to provide him with additional photographs of the vessel. In the spirit of that request, additional photographs were taken onboard the GOLDEN DESTINY on December 16, 2000, and furnished to plaintiff's counsel thereafter. At that time, the ship was in the port of Bayonne, New Jersey for a short turnaround, and defendants, on fairly short notice, had to arrange for a naval architect and a surveyor to visit the vessel to take these photographs, at substantial expense. Captain Adedakis was not onboard at that time.

497758_1

Somewhat surprisingly, plaintiff suggests that defendants have some sinister or ulterior motives in deposing their master, Captain Adedakis, and in filing their Motion for Summary Judgment. Nothing could be further from the truth. As the Court is aware, ship masters do not stay on the same vessel forever, but they are transferred to other ships. When not on a ship, they may be at home for vacation for several months before receiving orders to command another vessel. In this case, Captain Adedakis, at least for the past year, has been in command of the tanker ARCADIA, and at sea almost continuously, (except for vacation at home in Greece in the middle of the year.) and not anywhere around this area. Plaintiff pretends to be surprised when an opportunity comes to depose a ship's master, who has been at sea on another ship, or otherwise unavailable.[1]

In most cases involving admiralty and maritime matters, the defendants in a personal injury case are usually at a tactical disadvantage, because of having to eventually produce a ship's master for either a perpetuation deposition or trial, especially since it is the ship's charterer, and not the owner, who directs the vessel's calls. With respect to plaintiff's suggestion that "defendants could easily have submitted their captain's testimony in support of a motion for summary judgment by way of an affidavit" or that "the deposition could have been taken earlier by telephone or other electronic means", these were not practical alternatives. A telephone deposition of a foreign witness whose primary language is Greek, with English as his second language, is extremely difficult to do, especially considering the need for an interpreter as well as the fact that it is virtually impossible to conduct a "telephone deposition" of a master when his ship is at sea, especially if it is another vessel and he does not have access to the

---

[1] Oil tankers, most of the time, do not stay in port very long; sometimes only for 24 hours or less. This was the situation with the ARCADIA on February 8, when Captain Adedakis was deposed.
497758_1

records.  As to an affidavit, if defendants had done this, then plaintiff probably would have complained that the affidavit would not have been subject to cross-examination.

Counsel for plaintiff badly misrepresents the background of the decision by defendants to take their master's deposition.  Although Captain Adedakis has been in the port of New Orleans quite a few times during his 22 year career on tankers, he has been unavailable in this area until recently when his present ship, the ARCADIA, was diverted to New Orleans on short notice when the ship originally had plans to discharge her cargo of foreign crude oil in New York or some other less convenient port.  What would plaintiff have said if defendants, for example, had noticed the master's deposition when the captain was home on vacation in Greece?  Or, suppose that defendants noticed the captain's deposition at a loading port in Africa or South America, or a discharge port in either another country or even New York, any of which would have required substantial expenses of air travel as well as the additional travel expenses of possibly a Greek interpreter and a court reporter.  All of which brings to mind the fact that this case has been very expensive thus far, considering that plaintiff allegedly sprained his ankle on defendants' vessel in a blatant exercise of poor judgment.

Defendants understand that there is a possibility that the case at bar may not go to trial on March 12, 2001, because of a criminal matter on the docket that day which would take precedence, if it goes to trial.  The Motion for Summary Judgment, together with the recently taken deposition of Captain Adedakis, offers the Court an opportunity to summarily dispose of this matter without the necessity of subjecting innocent defendants to a time consuming and costly trial for an ankle sprain that should never have happened.

497758_1

## Conclusion

Defendants respectfully submit that plaintiff has not provided any good reason or excuse for the Court to deny defendants' Motion for Leave to File their Summary Judgment, which was filed in the interest of fairness and judicial economy.

Respectfully submitted,

*/s/ signature*

Robert B. Fisher, Jr. #5587
Thomas D. Forbes #5682
-OF-
**CHAFFE, McCALL, PHILLIPS,
 TOLER & SARPY, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
**Attorneys for Freedom Navigation, Inc. and
Universe Maritime, Ltd.**

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 21st day of February, 2001, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by hand delivery, telecopy transmission, or by mailing the same by United States mail, properly addressed and first class postage prepaid.

*/s/ signature*

497758_1