FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 APR 27 PM 4: 39

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MARTIN GOULD, JR. | * | CIVIL ACTION |
| VERSUS | * | NO. 00-304 |
| M/V GOLDEN DESTINY, ET AL | * | SECTION "N" |

ORDER AND REASONS

Before the Court is defendants Freedom Navigation Inc.'s and Universe Maritime Inc.'s Motion for Summary Judgment. For the following reasons, the defendants' motion is DENIED.

BACKGROUND

On February 6, 1999, plaintiff Martin Gould, Jr., a veteran Mississippi river pilot, guided the oil tanker M/V Golden Destiny from New Orleans, Louisiana to the GATX Refinery in Good Hope, Louisiana. Because Gould did not like the dock access at GATX, he made arrangements for a launch to pick him up from the ship's ladder on the port side. According to Gould, when he was ready to depart, "The captain informed me he had no one to bring me down and asked me if I would find my own way...I told him okay." Gould Depo., Nov. 21, 2000 at 48:6-11.

Gould then proceeded down the interior stairways and hallways of the ship's accommodation house, but he came out "on the wrong side of the ship. I had come out on the

DATE OF ENTRY
APR 3 0 2001

Fee____
Process____
X /Dktd____
__CtRmDep____
Doc.No.____

starboard side." Id. at 49:4-6. To get to the port side where his launch was waiting, Gould decided to go across the deck instead of going back through the accommodation house. Making his way across the deck, Gould proceeded through the pump room, an unauthorized area. Gould exited the pump room on the port side by way of a small platform about 13 inches above the deck. Near the end of this platform is a pipeline, 8-1/2 inches in diameter, the top of which is approximately 18-1/2 inches above the deck. Gould stepped from the platform directly onto this pipeline, standing on it with both feet. He then stepped down with his right foot, but as he did so, one of the attending tugs blew its whistle, ". . . and it distracted me and I looked up and I slipped. I didn't fall on my face or fall down. I caught myself with my left leg and that's when I turned my (right) ankle over." Id. at 59:1-5.

Gould has brought the instant suit against the owners of the Golden Destiny, alleging that they negligently caused his ankle injury by failing to properly escort him from the ship. The defendants now move for summary judgment on the grounds that the uncontested facts prove that they were not negligent.

## LAW AND ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The defendants argue that summary judgment is appropriate because Gould is solely responsible for his accident and no issues of material fact suggest otherwise.

To successfully oppose the defendants' motion for summary judgment, Gould must set forth specific facts to establish a genuine issue of material fact and cannot merely rest on

allegations and denials. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Gould claims that a genuine issue of material fact exists as to whether he chose to disembark from the ship without an escort or whether his request for an escort was refused.

The Golden Destiny's captain, Konstadinos Adedakis, stated in his deposition that he arranged for the third officer to escort Gould from the ship and that Gould only needed to wait five minutes for the officer to arrive. Adedakis Depo., Feb. 8, 2001 at 137:17-22. Captain Adedakis further testified that Gould declined his offer of an escort, saying "okay, Captain, don't worry about. I know the way. I go down alone." Id. at 138. Gould, however, claims that "The captain informed me he had no one to bring me down and asked me if I would find my own way." Gould Depo., Nov. 21, 2000 at 48:6-9. In addition, Gould asserts that he did not tell Adedakis that he knew the way. Id. 48:12-16. As the non-moving party, factual controversies are to be resolved in Gould's favor. *See* Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Accordingly, for purposes of the instant motion, the Court must conclude that the captain did not offer Gould an escort.

Regardless of whether or not an escort was made available, the defendants argue that the issue is not material to Gould's case. Both parties agree that a vessel owner owes a business visitor like Gould "the duty to exercise reasonable care under the circumstances." Kermarac v. Compagnie Generale TransAtlantique, 358 U.S. 625, 632 (1959). Relevant to the case at bar, this duty of care "includes provision for safe means of ingress and egress from the vessel. . ." 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 5-5 (3d ed. 2001). Gould asserts that the defendants breached their duty of care by failing to provide an escort. The defendants claim that they were not required to provide an escort because there is no "custom" for a pilot to be escorted

from the bridge of a vessel when disembarking, particularly when the ship is docked. The defendants' master mariner and expert pilot witness, Captain Michael Stoller, states that

> it is a commonly accepted maritime practice for pilots to disembark from the vessel by exiting the bridge and proceed to the accommodation area without an escort by shipboard personnel. While shipboard personnel will sometimes escort a pilot from the bridge it is by no means a requirement of the maritime industry.

Stoller Aff. at ¶ 31. Gould, however, points out that Captain Adedakis testified that providing an escort is "standard courtesy among seamen." Adedakis Depo., Feb. 8, 2001 at 154:17-20.

The Fifth Circuit has stated that "reasonable care under the circumstances" varies according to the facts of each case. Smith v. Southern Gulf Marine Co. No. 2, Inc., 791 F.2d 416, 421 (5th Cir. 1986)(quoting Rainey v. Paquet Cruises, Inc., 709 F.2d 169, 171 (2d Cir. 1983)). The circumstances "include, inter alia, the experience of the crew, the type of carrier involved, the dangers to the passengers peculiar to that type of carrier, the carrier's degree of control over the passengers, and the carrier's ability to take precautions against such dangers." Id. In the instant case Captain Adedakis has testified that, as an employee of defendant Universe Maritime, Ltd., he generally follows the "courtesy practice" of providing a pilot with an escort on and off the ship. Adedakis Depo, Feb. 8, 2001 at 154:22 - 155:2. Since the captain admits that he normally escorts pilots from his ship, the Court finds that the issue of whether Gould was offered an escort is material to the question of whether the defendants exercised reasonable care under the circumstances. Accordingly, the defendants' motion for summary judgment is DENIED.

New Orleans, Louisiana, this 27 day of April, 2001.

EDITH BROWN CLEMENT
UNITED STATES DISTRICT JUDGE